793 F.2d 1294
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
JACK LYLE, Defendant-Appellant.
 85-3087, 85-3254
 United States Court of Appeals, Sixth Circuit.
 5/8/86
 
 Before: ENGEL, KENNEDY and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-Appellant brings two appeals arising out of his conviction on drug and weapons possession charges and his pretrial detention. Defendant alleges seven errors, one involving the pretrial detention and the other six related to the trial.
 
 
 2
 The Federal Bureau of Investigation, in cooperation with the Summit County, Ohio, Sheriff's Department, began an investigation of several narcotics cases in late 1983. As part of the investigation, the FBI arranged for an informant, Robert Taylor, to make supervised narcotics purchases from defendant. The purchases were made on December 30, 1983; February 19, 1984; and June 28, 1984. On November 7, 1984, the FBI, armed with an affidavit of agent Keith Thornton, obtained a warrant from a United States magistrate to search defendant's residence. On November 10, 1984, the FBI arrested defendant as defendant drove up to the house. During the arrest, they found a bag containing 236 grams of marihuana on the floor in front of the driver's seat of defendant's car.[1] Defendant's fiancee observed the arrest from the house.[2] Within thirty to forty minutes of the arrest, the agents searched defendant's house and seized a number of items. They found a 12 gauge shotgun (in defendant's bedroom), various drug paraphernalia (bong pipes, a benzomatic torch, and test tubes), some ammunition (including that for a 9 millimeter weapon), a pouch for 9 millimeter magazines, and a holster for a 9 millimeter pistol. The police also found a loaded 9 millimeter pistol in the neighbor's yard beneath defendant's open bedroom window.[3]
 
 
 3
 Defendant's first assignment of error involves the next series of events. Specifically, defendant complains that the hearing, required by the Bond Reform Act of 1984, Pub. L. 98-473, 98 Stat. 1976, to determine whether defendant should be detained without bail, was not held 'immediately upon [defendant's] first appearance before the judicial officer.' See 18 U.S.C. Sec. 3142(f).
 
 
 4
 As noted above, defendant was arrested on November 10, 1984. He was arraigned before the magistrate on November 13. The magistrate set bond at $75,000. A preliminary hearing was held on November 20. Probable cause was established and defendant was bound over to the grand jury. The government filed the grand jury indictment on December 5.[4] On December 12, defendant was arraigned before the magistrate and pleaded not guilty. On January 8, 1985, defendant moved for a reduction in bail. On January 9, a United States District Judge held a hearing on the bond reduction issue and ordered it reduced to $50,000 cash. When defendant's mother advised the clerk that she was posting bond on January 10, the government filed a motion to determine the source of the money, see United States v. Nebbia, 357 F.2d 303 (2d Cir. 1966). The District Judge held a hearing for such a purpose on January 11, and, due to its length, adjourned it for completion on January 14. At the resumption of the hearing on January 14, the government moved, for the first time, for detention of defendant without bail. A hearing was held on the motion on January 14, and the court ruled in the government's favor. The pretrial detention order was filed on January 22. Defendant filed a notice of appeal on January 23 and moved the District Court to stay proceedings until this Court could review the detention order. The District Court's denial of that motion was filed January 28. Defendant states that he was not served with the order denying his motion until January 29, the day of trial.
 
 
 5
 The issue presented by this first assignment of error--whether the government complied with section 3142(f)--has attracted a significant amount of attention in the Courts of Appeals recently. We find it unnecessary to decide, however, whether there has been a violation of the statute. Defendant's appeal of the detention order is now moot. Defendant has been convicted and his sentence was credited with the time he spent in detention. Defendant responds that he was denied an opportunity to appeal the order because of the timing of the District Court's denial of defendant's motion to stay proceedings. Defendant did, however, have the opportunity to appeal the detention order. Although defendants are required to seek a stay in the first instance from the district court, when that court does not rule in time to protect defendants' rights, Rule 8 of the Federal Rules of Appellate Procedure permits application for stay to the Court of Appeals. Thus, the issue is one that does not evade review. Defendant's only real answer to the mootness issue is that the detention order interferred with his ability to prepare his defense, and thus that a new trial is required. Defendant, however, makes no showing of prejudice to this Court. Although he argues in his brief that defendant might have been able to find a witness, and at oral argument states that the witness would have testified about one of the drug-buy taped conversations, he concedes that the witness' testimony would be cumulative of the testimony of another witness he did call. Moreover, the conversation itself was on tape. Under these circumstances, we hold that defendant has failed to show he was prejudiced, even accepting the representations of his brief and oral argument.
 
 
 6
 Defendant's second assignment of error is that the search warrant was not based on timely enough information to establish probable cause. The warrant was based on the information contained in Thornton's affidavit. Thornton stated in his affidavit that Taylor (the informant) had bought cocaine from defendant at defendant's house on the three occasions that later formed the basis for defendant's indictment and conviction. Thorton also stated that Taylor was at defendant's house on November 2, 1984, and watched defendant consume one-eighth of an ounce of cocaine. Absent any showing of bad faith on Thornton's part, even if his affidavit did not establish probable cause due to untimeliness, the fruits of the search are not excludable. United States v. Leon, 468 U.S. 82 (1984). Thus, defendant's second assignment of error ultimately depends on the strength of his third--that the affidavit supporting the warrant contained information Thornton knew was false.
 
 
 7
 Defendant argues that Thornton knew Taylor had not been in defendant's house on November 2; that, in fact, Taylor hadn't been there for at least a month prior to the day the warrant was sought. Apparently no evidentiary hearing was held on this aspect of defendant's motion to suppress the evidence from the search. The question when such an evidentiary hearing must be held was addressed by the Court in Franks v. Delaware, 438 U.S. 154 (1978). There, the Court held that an evidentiary hearing is required if 'the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warranty affidavit, and if the allegedly false statement is necessary to the finding of probable cause.' Id. at 155-56. Assuming that the second requirement was met, the District Court was not clearly erroneous in its implicit finding that defendant did not make a substantial preliminary showing of intentional falsity or reckless disregard for the truth.
 
 
 8
 The only evidence before this Court (and, thus, presumably the only evidence before the District Court) on that issue is an affidavit by the defendant denying that Taylor was in defendant's house after early October, 1984. This evidence hardly amounts to more than a conclusory challenge. See id., 438 U.S. at 171. The affidavit is no more than an assertion by the defendant himself that the informant lied to the agent/affiant. There is no support at all for the allegation that the affiant, rather than Taylor, knew Taylor had not been in defendant's house on November 2, or that he included that fact with reckless disregard for whether it was true. See also Colorado v. Nunez, 465 U.S. 324, 327 (1984) (White, J., concurring).
 
 
 9
 Assignment of error number four is that the District Court erred in failing to admit various parts of Taylor's criminal record into evidence. The prior convictions included the following: two charges of malicious destruction of property (1966); abuse and obstruction of a police officer (1966); obstruction of a police officer (1970); filing a false police report (1973); two counts of assault (1975); and public gaming (1976). Defendant also sought to introduce into evidence Taylor's dishonorable discharge from the Navy for violation of the Dyer Act (by theft of a car).
 
 
 10
 Defendant contends that Taylor's credibility was critical on the cocaine distribution counts. As will be noted below, the substantial supervision of the drug sales to Taylor helped to reduce the importance of Taylor's credibility in this case. Furthermore, the court did let in a great deal of impeaching evidence. Defendant was able to get Taylor to admit that he was convicted of, and served two years for, breaking and entering in 1966; that he was convicted of violating the Dyer Act; that he was convicted to escaping custody; that he was convicted on drug charges in 1982 and was sentenced to five years probation; and that he was involved in a prostitution ring in the late 1970's.
 
 
 11
 With respect to the convictions that were not admitted, the operative provision is Federal Rule of Evidence 609. The rule states that evidence that a witness has been convicted of a crime shall be admitted, 'but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.' Only the falsification of a police report conviction meets those requirements, and admission of that conviction is in conflict with the provision of Rule 609(b) that evidence of a conviction is not admissible 'if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date . . ..' The Rule does go on to permit admission of older convictions if the probative value of the conviction 'supported by specific facts and circumstances substantially outweighs its prejudicial effect.' In light of the facts and circumstances noted above, the District Court did not abuse its wide discretion in determining that the rigorous requirements of the Rule were not met.
 
 
 12
 Assignments of error five and six attack the District Court's failure to direct a verdict on each of the counts for which defendant was convicted. In reviewing the sufficiency of the evidence for a conviction, this Court must view the evidence in the light most favorable to the government and draw every reasonable inference from the evidence in the government's favor. United States v. Tilton, 714 F.2d 642, 645 (6th Cir. 1983). The issue is whether there is sufficient evidence for a jury to find guilt beyond a reasonable doubt. United States v. O'Boyle, 680 F.2d 34 (6th Cir. 1982).
 
 
 13
 The government's evidence on the cocaine distribution counts consisted of the following. The FBI recorded two telephone conversations between Taylor and defendant setting up the December 30, 1983 sale. In the first conversation, Taylor asked Defendant, 'You did not get nothing, huh?' and told defendant, 'I'll hold these people off. You know, they been calling me and bugging me, I had to leave the house for awhile.' Defendant said, 'I'm gonna have it by then [tomorrow morning], if I, if I gotta take somebody's . . ..' In the second conversation, defendant said that he '[g]ot it last night and its gone already.' He said he would try to get some more. He agreed to save Taylor 'a quarter.' (Tr. at 115-17). Before the sale, the FBI searched Taylor and his car. They also put a body recorder on Taylor. They then followed Taylor as he drove to defendant's house. Taylor entered the house and bought one-fourth of an ounce of cocaine from defendant. The tape recorded conversation includes statements by defendant that it 'ought to be real good,' that it '[c]ome back about 65, 70 percent.' He told Taylor 'there's some cooked' and asked Taylor if he wanted 'to do a little bit.' (Tr. at 118). The FBI then watched Taylor leave the house and followed him as he drove away. When they reached their destination, the FBI agents took the cocaine from Taylor and searched him again before letting him go. The June 28, 1984 sale was supervised in the same manner. At that sale, defendant told Taylor to 'do a line. Do a hit.' He also stated that he was giving Taylor 'what they call Peruvian flake.' The evidence of guilt of the drug counts is not only sufficient but overwhelming.
 
 
 14
 The predicate felony record for the weapons counts was stipulated by defendant. The evidence that defendant possessed these weapons was Taylor's testimony that he had seen defendant with a 9 millimeter pistol, that ammunition and accessories were found in the house, the shotgun was found in defendant's bedroom, and the pistol was found outside defendant's window in the neighbor's yard. The jury also knew that defendant's fiancee was in the house between the time of the arrest and the search and could have inferred that she attempted to dispose of the pistol by throwing if out the window.
 
 
 15
 With respect to the marihuana, defendant argues that the jury could not ascertain, beyond a reasonable doubt, that the marihuana belonged to defendant and not to Wallace Reed, who was also in the car. The evidence connecting the marihuana to defendant is that it was his car and the bag was on the floor in front of the seat on his side. As to these three counts, we also find the evidence sufficient.
 
 
 16
 The seventh and final assignment of error is that defendant should not have been sentenced separately on the weapons charges. Defendant relies on United States v. Rosenbarger, 536 F.2d 715 (6th Cir. 1976), cert. denied, 431 U.S. 465 (1977). There this Court found that the defendant's conviction on three separate counts of receiving and having in his possession a firearm 'present[ed] squarely before us the issue of whether the Government may treat each weapon simultaneously possessed by a felon as a separate offense.' Id. at 720 (footnote omitted). We held that only one offense is charged 'regardless of the number of firearms involved, absent a showing that the firearms were stored or acquired at different times or places.' Id. at 721. Defendant is entitled to have his conviction on one of the gun counts vacated. The government has elected to have Count V (possession of the shotgun) vacated if the Court requires that the sentence be corrected.
 
 
 17
 We affirm the judgments of conviction on Counts I, II, III, IV and IV, and vacate the judgment of conviction on Count V.
 
 
 
 [1]
 The car was actually owned by defendant's mother
 
 
 [2]
 Defendant and his fiancee have since married, and she now goes by the name Dawn Lyle
 
 
 [3]
 The screen to the window was on the ground beneath it
 
 
 [4]
 The grand jury charged defendant with six counts: three separate counts of intentionally distributing cocaine in violation of 21 U.S.C. Sec. 841(a)(1) (one count for each of the supervised sales to Taylor); two counts of possessing a firearm, after having been convicted of a felony (possession of heroin for sale in Arizona in 1977), in violation of 18 U.S.C. Sec. 1202(a)(1) (one count for the shotgun found in defendant's bedroom, and the other for the 9 millimeter pistol found beneath defendant's bedroom window); and one count of possession of marihuana in violation of 21 U.S.C. Sec. 844(a) (for the marihuana found in defendant's car). Defendant was eventually convicted on all but the second cocaine distribution count