NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0097n.06

No. 13-6418

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,           )
                                    )
        Plaintiff-Appellee,         )
                                    )
v.                                  )      ON APPEAL FROM THE UNITED
                                    )      STATES DISTRICT COURT FOR THE
CHARLES EDWARD ADAMS,               )      EASTERN DISTRICT OF KENTUCKY
                                    )
        Defendant-Appellant.        )
                                    )
                                    )

**FILED**
Feb 02, 2015
DEBORAH S. HUNT, Clerk

BEFORE:     DAUGHTREY, McKEAGUE, and WHITE, Circuit Judges.

        MARTHA CRAIG DAUGHTREY, Circuit Judge.   Pursuant to a written plea agreement, defendant Charles Adams pleaded guilty to a charge of threatening to cause bodily injury to a witness with the intent to retaliate and received a below-Guidelines sentence of 48 months in prison.   The witness in question was a confidential informant in a federal drug-trafficking investigation.  Adams now challenges the procedural reasonableness of his sentence by asserting that the district court erred in enhancing his base offense level for "threatening to cause physical injury to a person . . . in order to obstruct the administration of justice."   *See* U.S. Sentencing Guidelines Manual § 2J1.2(b)(1)(B).  Specifically, Adams contends that the  government did not prove at sentencing that his conduct amounted to punishable threats and, in any event, that the First Amendment protected the allegedly threatening comments he made in Facebook.  Because we conclude that Adams has waived his challenge to the nature of the comments made by

pleading guilty to the charged offense and thus admitting all elements of the crime, we affirm the

judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

From August 2011 to August 2012, the United States Department of Justice's Bureau of

Alcohol, Tobacco, Firearms & Explosives (ATF) conducted an undercover investigation into

drug-trafficking and weapons-trafficking in Lexington, Kentucky. As part of that investigation,

ATF agents used confidential informants to purchase contraband from various individuals,

including from David "DC" Campbell. Ultimately, on August 21, 2012, Campbell was arrested

for his alleged participation in the trafficking operation.

That same day, an individual later identified as Phillip Hudson posted on his Facebook

page a picture of the confidential informant who had been instrumental in building the case

against "DC." Almost immediately thereafter, other people began posting Facebook comments

to the photograph of the confidential informant. Adams, using the account name "Charles

MrBlackflagmusic Adams," posted the following unedited statements, some of which

accompanied a photograph of the revealed informant:

> Etc niggas a bitch..got my lil bruh on news an shit… hoe ass snitchin ass nigga..kill his ass
>
> Sick of these snitchin ass niggas.. ya'll need ya fukin heads bashed all the way in….free my lil bruh DC..#UFUKNIGGASNEEDTOBEKILLED
>
> u niggas need to get ya paperwork together u rat bastards.. I keeps my federal paperwork.. niggas ain't made the same no more
>
> Police ass nigga.. kill yaself…

The investigation also uncovered the following Facebook exchange between Adams and an

individual with the user name Ayesha Bouldercrestfirstlady Gentry:

Gentry: We cut from a different cloth these niccas is made in China ya diigg !!

Adams: Family who u telling… it's a got damn shame… niggas need to start exposin these bastards… old phony ass niggas

Gentry: Wys……. #KILL ALL RATS

Adams: I second that.. #DEATHTOUFUKNIGGAS

Eventually, Adams was arrested by federal authorities and charged with violating 18 U.S.C. § 1513(b)(2) (criminalizing threats made with the intention of retaliating against a person for providing information relating to the commission of a federal offense). Prior to trial, he entered into a plea agreement with the government in which Adams agreed that the government "could establish the essential elements of the offense [] beyond a reasonable doubt, even though he claimed that "he did not plan to do harm to the confidential informant." In the agreement, he explicitly waived his right to appeal and "to attack collaterally the guilty plea and conviction," but "reserved the right to appeal his sentence." At a hearing before the district judge, Adams again admitted to all the conduct alleged by the prosecution and withdrew from the court's consideration a letter he had written earlier, in which he stated, "I was just expressing myself. Ma'am, I must admit that I don't quite understand how I committed a crime, because I was under the impression that I had a constitutional right to the freedom of speech." In light of the evidence and testimony before her, the district judge accepted Adams's change of plea, adjudged him guilty of the crime charged, and set the matter for sentencing.

At the sentencing hearing, the prosecution and the defense agreed that the base offense level under the United States Sentencing Guidelines for the offense of conviction was 14. Furthermore, both sides agreed that Adams was entitled to a three-level reduction for acceptance of responsibility. At least by the time of the sentencing hearing, the defense also did not dispute that Adams's criminal history placed him in category VI. If those had been the only applicable

sentencing considerations, the advisory Guidelines range for a category VI, level-11 offender like Adams would have been 27-33 months. However, the probation office and the government argued that Adams's offense level should be enhanced eight additional levels under § 2J1.2(b)(1)(B) of the Guidelines because the offense involved a threat to cause physical injury in order to obstruct the administration of justice. With that eight-level increase, the applicable advisory Guidelines sentencing range thus became 63-78 months.

Adams objected to the eight-level increase. Although "[h]e has accepted responsibility for his actions, and fully realizes that his actions resulted in his being guilty of the crime charged," he incongruously claimed that "none of his comments threatened to cause physical injury. The comments were threatening in nature, but he never threatened to cause, or have caused, physical injury to a person."

The district court overruled Adams's objection, concluding that the Guidelines were correctly calculated and adopted the presentence investigation report's factual findings. However, the district court did take note of the fact that Adams seemed genuinely "remorseful for what he did in terms of not taking fully into consideration the potential impact of his actions." That remorse, combined with the defendant's acceptance of responsibility, led the district court to vary downward from the applicable Guidelines range and sentence Adams to 48 months in prison. Adams now appeals to this court, challenging application of the eight-level increase in his base offense level under the Guidelines.

## **DISCUSSION**

On appeal, Adams asks us to vacate his sentence and remand the matter to the district court for resentencing. Unfortunately for Adams, however, the explicit terms of his plea agreement with the government preclude us from affording him the relief he seeks. That

agreement provided explicitly that "[t]he Defendant waives the right to appeal and the right to attack collaterally the guilty plea and conviction."

We have held consistently that a criminal defendant may waive any constitutional right in a plea agreement as long as that waiver was knowing and voluntary. *See, e.g.*, *United States v. Hockenberry*, 730 F.3d 645, 671 (6th Cir. 2013), *cert. denied sub nom. Gray v. United States*, 134 U.S. 1044 (2014). Because Adams makes no attempt to establish that the plea agreement was not entered knowingly and voluntarily, we must give effect to the terms of the waiver of appellate rights—as far as that waiver goes. We recognize, however, that the agreement provided further that Adams "reserved the right to appeal his sentence." Thus, pursuant to the terms of the plea agreement, Adams ordinarily would be entitled to argue that the § 2J1.2(b)(1)(B) enhancement of his base offense level was improper.

In making that argument in this case, however, Adams runs into a roadblock erected as a result of the very nature of his challenge. As stated previously, Adams objects to the application of the eight-level increase on the grounds that the comments he posted on Facebook were not punishable threats of violence but, rather, expressions of opinion protected by the First Amendment to the United States Constitution. In support of this interpretation of his postings, Adams suggests that the statements are not sufficiently specific to be considered credible threats, that the comments should be viewed more accurately as political speech or social commentary on the interaction between certain communities and the police, and that his postings simply were indicative of the type of hyperbolic speech typical in the rap-music culture in which Adams claims to have operated.

But having knowingly and voluntarily entered the plea agreement, Adams conceded both that he posted the comments attributed to him and that the comments "did include language

threatening bodily harm." He also admitted that the statements were made "with the intent to retaliate against a witness with respect to information given by the witness to a federal law enforcement officer relating to the commission of a federal offense." In short, Adams conceded that he made the statements necessary to justify a conviction under 18 U.S.C. § 1513(b)(2). Thus, contrary to Adams's assertion, the government did not have to prove at sentencing that his conduct constituted threats to cause bodily injury because Adams admitted as much by virtue of his guilty plea. *See United States v. Louchart*, 680 F.3d 635, 637 (6th Cir. 2012) (holding that a guilty plea 'comprehend[s] all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." (quoting *United States v. Broce*, 488 U.S. 563, 569 (1989)).

Because Adams conceded in his guilty plea that his statements constituted punishable threats, he waived any claim of First Amendment protection for his speech.[1] Moreover, at the plea hearing, the district court specifically asked Adams whether he had read and understood the terms of the indictment and the plea agreement. Indicating that he had done so, Adams then stated, under oath, that he was "willing to enter into the plea agreement and plead guilty . . . because [he] committed the acts described in the indictment." Again, because the indictment unambiguously charges that Adams knowingly threatened to cause bodily injury with the intent to retaliate for information given by the confidential informant, he cannot now claim that the comments were *not* knowing threats but, instead, were simple expressions of opinions protected by the First Amendment. *See, e.g.*, *Shackelford v. Shirley*, 948 F.2d 935, 939 (5th Cir. 1991) (holding that "intent to retaliate" necessarily removes the comments from the

---

[1] Adams's admissions of his intent to threaten and retaliate against a confidential informant distinguish this case from the United States Supreme Court's review of *United States v. Elonis*, 730 F.3d 321 (3d Cir. 2013), *cert. granted*, 134 S. Ct. 2819 (2014). In *Elonis*, the defendant denied a subjective intent to threaten his wife, prompting the Supreme Court to consider whether such a subjective intent must be proven in order to justify a conviction under a federal statute outlawing threatening communications.

category of protected ideas or advocacy); *United States v. Velasquez*, 772 F.2d 1348, 1357 (7th Cir. 1985) (holding that threats to retaliate cannot be considered social or political commentary or discourse). Adams's challenge to the propriety of the district court's application of § 2J1.2(b)(1)(B) to the sentencing calculus thus has been waived by his admission of guilt of the offense with which he was charged.

Finally, we note that in his reply brief, Adams has raised for the first time an issue of double-counting in connection with the calculation of his base offense level and the § 2J1.2(b)(1)(B) enhancement. Neither the district court below nor the government on appeal has had the opportunity to respond to this contention. For that reason and following our usual practice, we decline to review the argument. *See, e.g.*, *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002) ("We have held that 'the appellant cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in appellee's brief.'" (quoting *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001))).

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.